IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN POLNICKY, | No. C 13-1478 SI |
| Plaintiff, | **ORDER RE: DISCOVERY DISPUTE** |
| v. | |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; WELLS FARGO & COMPANY LONG TERM DISABILITY PLAN, | |
| Defendants. | |

Now pending before the Court is the parties' joint discovery letter. Docket No. 43. In the letter, plaintiff requests that the Court permit him to take limited discovery on three subjects.

**BACKGROUND**

This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq*. Defendant Wells Fargo & Company Long Term Disability Plan ("the Plan") is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). Docket No. 27, Morris Decl. ¶ 3. The Plan is established and sponsored by Wells Fargo & Company ("Wells Fargo") for the benefit of its employees. *Id.* The Plan is insured by a group disability income policy issued by Liberty Life Assurance Company of Boston ("Liberty Life") to Wells Fargo, Policy No. GF3-850-289424-01 ("the Policy"). *Id.* ¶ 4; Docket No. 26, McGee Decl. ¶ 3.

Plaintiff was employed by Wells Fargo and was a covered participant in the Plan. Docket No.

1, Compl. ¶ 7. On March 30, 2011, plaintiff submitted a claim for disability benefits to Liberty Life under the Wells Fargo & Company Short Term Disability Plan. Docket No. 26, McGee Decl. ¶ 8, Ex. C. Liberty Life approved plaintiff's short term disability claim and plaintiff was paid benefits through September 27, 2011, the maximum duration for short term disability. *Id.* ¶ 10, Ex. E.

On August 12, 2011, Liberty Life began its investigation of plaintiff's claim for long term disability benefits under the Plan. Docket No. 26, McGee Decl. ¶ 11, Ex. F. On June 1, 2012, Liberty Life sent a letter to plaintiff stating that it had determined that plaintiff was not entitled to long term disability benefits under the Policy. *Id.* ¶ 13, Ex. H. Plaintiff appealed Liberty Life's denial of benefits. *Id.* ¶ 14. On February 19, 2013, Liberty Life sent a letter to plaintiff denying his appeal and upholding its prior determination that he was not entitled to long term disability benefits under the Policy. *Id.* ¶ 14, Ex. I.

On April 2, 2013, plaintiff filed a complaint against defendants Liberty Life and the Plan, alleging a cause of action under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to him under the terms of his plan. Compl. ¶¶ 6-17. On October 18, 2013, the parties filed cross-motions for summary judgment on the issue of whether the de novo or abuse of discretion standard of review applies to plaintiff's ERISA claim. Docket Nos. 25, 28. On November 18, 2013, the Court granted plaintiff's motion for summary judgment, denied defendants' motion for summary judgment, and held that the de novo standard of review applies to plaintiff's ERISA claim. Docket No. 39.

By the present discovery letter, plaintiff requests limited discovery on the following three subjects: (1) the compensation paid to Liberty Life's "Consultant Physician," Dr. Gale Brown; (2) the job description for a Wells Fargo "Personal Banker"; and (3) the referral guidelines utilized by Liberty Life to send a claim to its "TCMS Unit." Docket No. 43. Defendants oppose plaintiff's requests.

**LEGAL STANDARD**

In conducting a de novo review of an ERISA plan's denial of benefits, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). Therefore, under the de novo review standard, a district court should determine whether the plaintiff is entitled to benefits based

2

on the evidence in the administrative record and evidence outside the administrative record may only be consider in "certain limited circumstances." *Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007). "[A] district court should exercise its discretion to consider evidence outside of the administrative record *only* when circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision." *Id.* (emphasis in original and quotation marks omitted). The following is "a non-exhaustive list of exceptional circumstances where introduction of evidence beyond the administrative record could be considered necessary":

> "[C]laims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process."

*Id.* (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993) (en banc)). The Ninth Circuit has warned "that 'a district court should not take additional evidence merely because someone at a later time comes up with new evidence' and that '[i]n most cases' only the evidence that was before the plan administrator at the time of determination should be considered." *Id.* (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995)).

The Ninth Circuit's decision in *Opeta* dealt with the issue of whether evidence outside the record is admissible rather than whether the evidence is discoverable. Nevertheless, courts in this district have held that "in light of *Opeta*'s limits on admissibility of evidence in de novo cases and the ERISA's policy of keeping proceedings inexpensive and expeditious, it is appropriate to place similar limits on discovery." *Rowell v. Aviza Tech. Health & Welfare Plan*, No. C-10-5656 PSG, 2012 U.S. Dist. LEXIS 16957, at *13-14 n.26 (N.D. Cal. Feb. 10, 2012); *accord Knopp v. Life Ins. Co. of N. Am.*, No. C-09-0452 CRB (EMC), 2009 U.S. Dist. LEXIS 120267, at *7 (N.D. Cal. Dec. 28, 2009).

///
///
///

**DISCUSSION**

**I.     Dr. Brown's Compensation**

In his first request, plaintiff seeks discovery related to the compensation Liberty Life paid to its "Consultant Physician," Dr. Gale Brown, for the years 2010, 2011, and 2012. Docket No. 43 at 2. Dr. Brown is one of seven non-treating doctors that reviewed or examined plaintiff during the claim process at Liberty Life's request. Plaintiff argues that it appears that Dr. Brown is a frequent consultant to Liberty Life and evidence of her compensation is relevant to establishing her potential bias. *Id.* In response, defendants argue that the compensation Dr. Brown has received from Liberty Life is not probative of any potential bias she may have. *Id.* at 4.

The Ninth Circuit has recognized that "'issues regarding the credibility of medical experts'" is one of the exceptional circumstances where the introduction of evidence beyond the administrative record could be considered necessary. *Id.* (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993) (en banc)). However, several district courts in this circuit have held that the mere fact that a physician receives compensation from a plan administrator for performing medical reviews is insufficient by itself to be probative of bias. *See, e.g.*, *Lavino v. Metro. Life Ins. Co.*, 779 F. Supp. 2d 1095, 1104 (C.D. Cal. 2011) (finding evidence that "MLS performed 77 examinations for MetLife between 2009 and September 2010, for which MetLife had paid $118,816.25" not probative of bias); *Nolan v. Heald College*, 745 F. Supp. 2d 916, 923 (N.D. Cal. 2010) (concluding that statistics showing that MetLife paid NMS $236,490 in 2002, $569,795 in 2003, $838,265 in 2004, and $1,671,605 in 2005 for independent medical opinions "are not probative of bias"); *Kludka v. Qwest Disability Plan*, No. CV-08-1806-PHX-DGC, 2010 U.S. Dist. LEXIS 34572, at *22 (D. Ariz. Apr. 7, 2010) ("The mere fact that 20 or 30% of [a doctor's] income is derived from record reviews does not show that he is biased."), *rev'd on other grounds by* 454 Fed. Appx. 611 (9th Cir. 2011).[1] Therefore,

---

[1] In the joint letter brief, plaintiff cites to the district court case *Caplan v. CNA Fin. Corp.*, 544 F. Supp. 2d 984 (N.D. Cal. 2008). In *Caplan*, the district court noted the apparent bias of the treating physician, Dr. Mahawar, and his employer, UDC, in part based on the amount of compensation UDC had received from the plan administrator over the years. *Id.* at 991-92. However, in *Caplan*, the district court also relied on "UDC's marketing material[, which] suggest[ed] that it offers insurers and plan administrators services that will support a parsimonious approach to administering claims[,]" and Dr. Mahawar's history of providing the claims administrator "with reports that frequently support a decision

4

the evidence plaintiff seeks—the compensation Dr. Brown received from Liberty Life—would not by itself be probative of Dr. Brown's credibility. Plaintiff "does not question Dr. [Brown]'s qualifications, raise any misrepresentations or discrepancies in [her] report, or provide any other facts which would indicate that [she] may have been biased." *Brice v. Life Ins. Co. of N. Am.*, No. C 10-04204 JSW, 2011 U.S. Dist. LEXIS 77525, at *8 (N.D. Cal. Jul. 18, 2011). "In the absence of any allegations which raise issues pertaining to Dr. [Brown]'s credibility," plaintiff has failed to clearly establish that this is an exceptional circumstance warranting discovery related to her compensation. *Id.* Accordingly, the Court denies plaintiff's first request for discovery.

## II. Wells Fargo Job Description for Personal Banker

In his second request, plaintiff seeks Wells Fargo's job description for the position of Personal Banker. Docket No. 43 at 2. Plaintiff states that during the claims process, Liberty Life utilized O*Net occupational classifications, including the classification for the position of "Personal Banker," to determine that plaintiff's occupation could be performed at both a sedentary and a light level. *Id.* Plaintiff argues that obtaining the Wells Fargo job description for the position of Personal Banker would allow him to prove that his former position of Mortgage Consultant is different from the position of Personal Banker. *Id.* In response, defendants argue that plaintiff did not work as a Personal Banker, and, therefore, the job description for that position has no relevance in this case. *Id.* at 4.

Plaintiff has failed to clearly establish that this additional discovery is necessary for the Court to conduct an adequate de novo review of Liberty Life's benefit decision. Plaintiff was employed by Wells Fargo as a Mortgage Consultant, not a Personal Banker. The administrative record already contains the job description documents provided by Wells Fargo for plaintiff's position of Mortgage Consultant. If plaintiff disagrees with Liberty Life's use of the O*Net classification for Personal Banker and contends that its analysis is flawed, then plaintiff can challenge the analysis by comparing Wells

---

to deny benefits to the claimant." *Id.* at 992. The district court specifically noted that "[a] summary of Dr. Mahawar's findings demonstrates that, of these 202 claimants, he found that 193 of them were capable of working full-time in some type of position under appropriate restrictions." *Id.* at 990. Plaintiff has failed to show that there is similar additional evidence related to Dr. Brown in the record in this action. Therefore, *Caplan* is distinguishable from the present action.

5

1 Fargo's description of the position of Mortgage Consultant with the job description O*Net provides for
2 the position of Personal Banker. Plaintiff fails to explain why the job description Wells Fargo uses for
3 the position of Personal Banker is necessary to challenge Liberty Life's analysis. Accordingly, the
4 Court denies plaintiff's second request for discovery.

### III.   Guidelines for Referral to TCMS Unit

In his third request, plaintiff seeks the guidelines Liberty Life uses for referring a claim to its Technical Claims Management Services ("TCMS") Unit. Docket No. 43 at 2. Plaintiff argues that these guidelines may show that Liberty Life took a more aggressive approach to plaintiff's claim based on the high benefit amount, reducing the credibility of its claim determination. *Id.* at 3. In response, defendants argue that the requested evidence is irrelevant because the credibility of Liberty Life's claim determination is not at issue under the de novo standard of review. *Id.* at 5.

The Court agrees with defendants. When de novo review applies, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits, without reference to whether the administrator operated under a conflict of interest." *Abatie*, 458 F.3d at 963. Here, the Court has determined that de novo is the appropriate standard of review for plaintiff's claim. Docket No. 39 at 8. Therefore, the Court must conduct its review without reference to whether Liberty Life was potentially biased in its claim determination. *See Abatie*, 458 F.3d at 963. Accordingly, the requested guidelines are not relevant to the Court's review, and the Court denies plaintiff's third request for discovery. *See, e.g.*, *Rowell*, 2012 U.S. Dist. LEXIS 16957, at *11 (explaining that because the court determined that the de novo standard of review applied, "structural or other incentives that may have affected Hartford's benefits decision or the exercise of its discretion are no longer relevant"); *Knopp*, 2009 U.S. Dist. LEXIS 120267, at *10 ("The Court does not order Defendants (at this juncture) to respond to any discovery requests related to claim procedures and guidelines . . . . Even if Defendants failed to follow claim procedures or guidelines, that failure might reflect upon the integrity and accuracy of the administrator's review of Ms. Knopp's disability claim, but that review is entitled to no deference on de novo review and is therefore irrelevant.").

**CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiff's request for limited discovery. This Order resolves Docket No. 43.

**IT IS SO ORDERED.**

Dated: March 5, 2014

SUSAN ILLSTON
United States District Judge